IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP MAURO, as assignee for DIAMOND CONTRACT FLOORING, LLC,**<br>**Plaintiff,**<br><br>v.<br><br>**OHIO SECURITY INSURANCE COMPANY,**<br>**Defendant.** | CIVIL ACTION<br><br><br><br>NO. 20-3319 |

**MEMORANDUM OPINION**

Plaintiff Philip Mauro won a $375,000 damages award in the Philadelphia Court of Common Pleas against Diamond Contract Flooring, LLC ("Diamond") for lung injuries he suffered after being exposed to the floor leveler product used at the construction site he was supervising without protective equipment. This lawsuit seeks, *inter alia*, a declaratory judgment that Defendant Ohio Security Insurance Company is required to provide coverage to and indemnify Diamond for Plaintiff's award. The Parties filed competing motions for summary judgment and Defendant filed a "Motion in Limine" seeking to exclude the testimony of Plaintiff's occupational safety expert. For the reasons that follow, Defendant's Motion for Summary Judgment will be granted, Plaintiff's Motion for Summary Judgment will be denied, and Defendant's "Motion in Limine" will be denied as moot.

I.   BACKGROUND

In 2016, Diamond hired Mauro's employer, Axis Construction Management, to install a new floor at the Philadelphia Airport Marriott. Mauro, supervising the work from the center of the construction area, did not wear a dust mask. Nearby, Diamond workers were mixing

1

Novoplan Easy Plus, a floor leveler product that contains silica sand.  After developing a cough, congestion, wheezing, chest pain, and a fever, Mauro was taken to the Aria Torresdale Hospital and treated for Chronic Obstructive Pulmonary Disease.

In February 2018, Mauro filed suit against Diamond in the Philadelphia County Court of Common Pleas alleging that Diamond had exposed him to toxic materials and chemicals, including silica sand ("the Underlying Lawsuit").  Diamond sent the Complaint to its insurer, Ohio Security Insurance Company ("Ohio Security"), which denied coverage and disclaimed any duty to defend Diamond in the Underlying Lawsuit, pointing to a provision in Diamond's insurance policy (the "Policy") that excluded coverage for injuries arising out of the inhalation or ingestion of "silica" or "silica-related dust" (the "Silica Exclusion").  The court in the Underlying Lawsuit awarded Plaintiff the money damages.

At some point, Diamond assigned to Mauro its right to sue Ohio Security for indemnification.  Mauro then filed suit against Ohio Security in the Court of Common Pleas of Philadelphia County, seeking a declaratory judgment that the Silica Exclusion does not apply, and damages in the amount of his award.  Ohio Security removed the action to federal court.

**II.  LEGAL STANDARD**

"On a summary judgment motion, the movant must show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992).  The same standard applies when, as here, the Parties have filed cross-motions for summary judgment.  *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).

The interpretation of an insurance contract is a question of law in Pennsylvania.  *Gen.*

*Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 158 (3d Cir. 2017).  Because Ohio Security seeks to disclaim coverage on the basis of a policy exclusion, it bears the burden of proving the applicability of the exclusion as an affirmative defense.  *Id*.  In determining whether Defendant has met this burden, "well-settled principles of contract interpretation" apply.  *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

The goal of contract interpretation is to "ascertain the intent of the parties as manifested by the language of the written instrument."  *Id*.  This language is the "polestar" of the inquiry.  *Id*.  In conducting this analysis, the "[w]ords in an insurance policy must be given a reasonable and normal interpretation."  *Progressive N. Ins. Co. v. Schneck*, 813 A.2d 828, 831 (Pa. 2002).  "Words of common usage" take on their "natural, plain, and ordinary sense."  *Madison Constr. Co.*, 735 A.2d at 108.  "[A]ll provisions of an insurance contract must be read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity while at the same time giving effect to all of its provisions."  *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012).  A court "may not rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy."  *Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984).

If "the language of the contract is clear and unambiguous, a court is required to give effect to that language," *Madison Constr. Co.*, 735 A.2d at 106, according to its "plain and ordinary meaning."  *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).  Ambiguous language is construed against the insurer.  *Madison Constr. Co.*, 735 A.2d at 106.  Ambiguity exists if the language of the contract is "reasonably susceptible of different constructions and capable of being understood in more than one sense."  *Reliance Ins. Co. v.*

*Moessner*, 121 F.3d 895, 900 (3d Cir. 1997). "[T]he question of whether a particular contract provision is ambiguous is a matter of law." *Kurach v. Truck Ins. Exchange*, 235 A.3d 1106, 1116 n.11 (Pa. 2020).

Once the meaning of the text has been established, courts compare the contractual provisions to the allegations in the complaint to determine whether the complaint triggers the insurer's duties under the policy. *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 (3d Cir. 2009).

### III.    DISCUSSION

The Complaint seeks a declaratory judgment that Ohio Security "is required to provide coverage to [Diamond] and indemnify [Diamond] for the judgement entered against it." The Court must determine, as a matter of law, whether Mauro's claim is excluded by the Policy—more specifically, by the Silica Exclusion provision in the Policy. Ohio Security bears the burden of proving that the Silica Exclusion applies to Plaintiff's injuries. *Gen. Refractories Co.*, 855 F.3d at 158.

The Silica Exclusion provides:

> This insurance does not apply to . . . a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".
>
> [. . .]
>
> "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.
>
> "Silica-related dust" means a mixture or combination of silica and other dust particles.

Reading just the title of the Silica Exclusion—"SILICA OR SILICA-RELATED DUST EXCLUSION"—could suggest that "silica" is an ambiguous term. The word "silica" as used in

4

the title could be a standalone noun such that the exclusion would apply to "silica" (as defined in the Policy) and "silica-related dust" (also defined in the Policy).  In the alternative the uses of the word "silica" and "silica-related" could be read to be adjectival, modifying the word "dust", such that the exclusion would be narrower—applying only to silica dust, or to silica-related dust.

But the analysis does not end with the title.  When interpreting a contract, context matters.  *St. Paul Travelers Ins. Co.*, 691 F.3d at 517 ("[A]ll provisions of an insurance contract must be read together.").  The rest of the Silica Exclusion clarifies that "silica" is a standalone noun, not a modifying adjective.  First, the operational language of the exclusion uses quotation marks to isolate the words "silica" and the phrase "silica-related dust" from each other:

> This insurance does not apply to . . . a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, **"silica" or "silica-related dust"**.

The quotation marks extinguish any possibility that the word "silica" in its first usage in that paragraph could be read to modify the word "dust."  Second, the Silica Exclusion explicitly defines "silica" as a standalone term that encompasses, but is not limited to, "silica dust":

> "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

Therefore, when read in context, the Silica Exclusion clearly applies not only to bodily injuries "arising out of" inhalation of "silica dust" but also to "silica," as defined according to its chemical formula, silicone dioxide, and including various manifestations of that chemical formula—crystalline, amorphous, or impure; particles, dust, and compounds.  Thus, if Plaintiff's injuries were caused by silica dust they are excluded from coverage.  Further, as relevant here, if they are caused by silicon dioxide in crystalline form they are excluded from coverage.

Here the Parties agree that Novoplan Easy Plus (which Plaintiff inhaled and to which his

injuries are attributed) contains silica sand and that silica sand is a form of crystalline silicone dioxide. More specifically, Defendant, in its Concise Statement of Undisputed Material Facts filed in support of its Summary Judgment Motion, states that "[s]ilica sand and silica dust . . . consist of the same mineral compound—silicone dioxide." Likewise, Plaintiff's expert, in his deposition, testified that silica sand is a silicone dioxide chemical. Plaintiff, in its Response to Defendant's Statement of Undisputed Material Facts admitted that "silica sand and silica dust are forms of crystalline silica." Defendant, in its Response to the Facts in Plaintiff Philip Mauro's Motion for Summary Judgment, asserted that the Safety Data Sheet for Novoplan Easy Plus "lists silica sand as a component" alongside "the chemical abstract service ("CAS") number for crystalline quartz silica." In his deposition, Plaintiff's expert agreed.[1] But for the inclusion of crystalline silicone dioxide in Novoplan Easy Plus, Plaintiff would not have been injured. Therefore, Plaintiff's injuries arise out of crystalline silicone dioxide. Because "silicone dioxide . . . in crystalline . . . form[]" is expressly included in the Policy's definition of "silica," to the extent that Plaintiff's injuries arose out of his inhalation of silica sand they are excluded from coverage.

Plaintiff also argues that the Court must construe the Policy in accordance with Diamond's "reasonable expectation" that silica sand was not excluded from coverage. Indeed, "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Reliance Ins. Co.*, 121 F.3d at 903. However, the "reasonable expectations

---

[1] Although Defendant challenged the admissibility of Plaintiff's expert report on various grounds, Defendant cited to these portions of Plaintiff's expert's deposition in support of its motion for summary judgment. At summary judgment, the court may consider any cited materials. Fed. R. Civ. P. 56(c)(3).

doctrine" has limited application in Pennsylvania in that it is not heedless of the express terms of the policy. *Madison Constr. Co.*, 735 A.2d at 109 n.8. "[M]ere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage." *West v. Lincoln Benefit Life Co.*, 509 F.3d 160, 169 (3d Cir. 2007) (alteration in original). Specifically, an insured "may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous" unless the insurer or its agent misrepresented the terms of the policy or issued a policy different from the one promised. *Id.* at 168-69 (holding that insured had no reasonable expectation of coverage where insurer's communications did not misrepresent the terms and conditions of reinstatement). Thus, Pennsylvania law looks not to the insured's conclusions or subjective beliefs, but to the insurer's actions in creating expectations. *Id.* at 171, n.6.

Plaintiff has not alleged that Ohio Security misrepresented the scope of the Silica Exclusion or issued a policy that differed from what it had promised. On the contrary, Plaintiff admitted in his Response to Defendant's Statement of Undisputed Material Facts that: (1) Plaintiff worked with its insurance broker, The Peterman Group, to select an insurance policy; (2) that a Peterson Group representative reviewed the Policy, which included the Silica Exclusion, and confirmed that the Policy contained the requested coverages; (3) that Diamond's President testified that he would have contacted The Peterman Group if he had had concerns about the scope of the Policy; and, (4) that he did not do so. Considering these factual admissions, and absent any allegation that Defendant's actions created a reasonable expectation of coverage, Diamond's subjective expectation that the exclusion did not apply to silica sand

7

cannot overcome the clear and unambiguous language of the contract.[2]

## IV. CONCLUSION

The Policy unambiguously provides that injuries due to inhaling silica dust are excluded from coverage by the Silica Exclusion. Further because silica sand is a form of crystalline silicone dioxide, any claim premised on the inhalation of silica sand also falls unambiguously under the Silica Exclusion. Accordingly, Ohio Security has no duty to provide coverage or indemnify Diamond for the judgment against it.

An appropriate order follows.

**BY THE COURT:**

**/s/ Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

---

[2] The other counts of the Complaint—alleging that Ohio Security breached its contract with Diamond by disclaiming coverage, and that this decision was made in bad faith—necessarily fail because they depended on the success of the declaratory judgment claim.